IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IMX, INC.,                          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )  Civ. No. 03-1067-SLR
                                    )
LENDINGTREE, LLC,                   )
                                    )
          Defendant.                )

**MEMORANDUM ORDER**

At Wilmington this  14th day of December, 2005, having

reviewed defendant's motion for partial summary judgment limiting

damages pursuant to 35 U.S.C. § 287(a), and the papers submitted

in connection therewith;

IT IS ORDERED that said motion (D.I. 165) is granted, for

the reasons that follow:

1. **Standard of review.**  A court shall grant summary

judgment only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c).  The moving party

bears the burden of proving that no genuine issue of material

fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter

the outcome are 'material,' and disputes are 'genuine' if

evidence exists from which a rational person could conclude that

the position of the person with the burden of proof on the

disputed issue is correct." Horowitz v. Fed. Kemper Life

Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal

citations omitted). If the moving party has demonstrated an

absence of material fact, the nonmoving party then "must come

forward with 'specific facts showing that there is a genuine

issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.

Civ. P. 56(e)). The court will "view the underlying facts and

all reasonable inferences therefrom in the light most favorable

to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63

F.3d 231, 236 (3d Cir. 1995). The mere existence of some

evidence in support of the nonmoving party, however, will not be

sufficient for denial of a motion for summary judgment; there

must be enough evidence to enable a jury to reasonably find for

the nonmoving party on that issue. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party

fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving

party is entitled to judgment as a matter of law. See Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).

    2. **Background facts.** On November 24, 2003, plaintiff IMX,

Inc. ("IMX") filed the above captioned action for alleged

infringement of U.S. Patent No. 5,995,947 (the "'947 patent").

The '947 patent issued on November 30, 1999 and is entitled

"Interactive Mortgage and Loan Information and Real-Time Trading

System."  According to the "Summary of Invention", the '947

patent

> provides a method and system for trading loans
> in real time by making loan applications, such
> as home mortgage loan applications, and placing
> them up for bid by a plurality of potential
> lenders.  A transaction server maintains a database
> of pending loan applications and their statuses;
> each party to the loan can search and modify that
> database consistent with their role in the
> transaction, by requests to the server from a
> client device identified with their role.

('947 patent, col. 2, ll. 12-20)

   3.  Since 1997, IMX has marketed and sold software under the

name "IMX Exchange."  IMX markets the IMX Exchange software to

loan brokers and wholesale lenders.  Loan brokers use the IMX

Exchange software to, among other things, input loan applications

on behalf of borrowers, transmit those loan applications to the

Exchange, and retrieve bids on those loan applications from

lenders who participate in the Exchange.  Lenders use the IMX

Exchange software to, among other things, search for and place

bids on loan applications of interest that are stored in the

Exchange.  IMX claims that the IMX Exchange software practices

the claims of the '947 patent.

   4.  From 1997 to March 2000, IMX distributed copies of the

IMX Exchange software to its broker customers by CD-ROM.  For lender customers, IMX technicians installed the IMX Exchange software at the lender's location.  In March 2000, IMX began using a web-based version of the IMX Exchange software, where the patented software was made available to customers via the Internet rather than distributing copies of the software to customers via CD-ROM.  The basic features of the web-based version of the software have remained essentially the same since March 2000.  The home page of the IMX website (http://www.imx.com) contains links to three main sections: http://broker.imx.com (the "Broker Section"), http://lender.imx.com (the "Lender Section"), and http://corporate.imx.com (the "Corporate Section").  In order for broker customers to access and run the IMX Exchange software, they must access the Broker Section of the IMX website and enter a user name and password from the login screen in the Broker Section.  Similarly, in order for lender customers to access and run the IMX Exchange software, they must access the Lender Section of the IMX website and enter a user name and password from the login screen of the Lender Section.  Public users may access the login pages for brokers and lenders, but may not access or run the actual IMX Exchange software without a user name and password.

    5.  It is not disputed that the CD-ROMs distributed by IMX

between November 1999 and March 2000 were not marked with the
'947 patent. With respect to the IMX website, a browser of the
Corporate Section would read that "IMX®, Inc. is a leading
provider of software solutions for the mortgage industry. . . .
IMX's patented pricing technology was developed using Java and
runs in an Oracle/Sun environment." Links from "Corporate Home"
include "Product Information" and "About Us". On the "About Us"
page, a browser views a link identified as "Patent". Once
accessed, this link includes the following information:

### IMX® Patents

> IMX Exchange was awarded a patent in late 1999
> for our unique loan information and real-time
> trading system. This was a milestone for IMX
> Exchange. We are pleased that the Patent Office
> has recognized the technology innovations
> created by our developers, and envisioned by our
> founder, Steve Fraser.

> Patent Press Release

> Click here to view patent

The "Patent Press Release" page identifies the '947 patent by
number and describes "the IMX Exchange invention [as] provid[ing]
a method and system for trading loans in real time." In the same
document, "IMX Exchange" is described as an "Internet-based,
business-to-business trading network." Also in the Corporate
Section is a link to "Product Information". Under the heading
"Lender Solutions", there is an explanation of "IMX Exchange® for
Lenders" and of "Private Label for Lenders". The '947 patent is

not mentioned, although under the "Private Label for Lenders"
heading, IMX states the following:  "Using patented technology,
IMX's Private Label allows wholesale lenders to connect and
transact business with their approved brokers on the Internet."
Under the heading "Broker Solutions", there is an explanation of
"IMX Exchange® for Brokers" and of "My Marketing for Brokers";
the latter "product" allows brokers to "[a]ccess a wide variety
of marketing tools, ranging from letters and flyers to
professionally designed radio and print advertisements.  You have
access to My Marketing by signing up for either IMX Exchange."

    6.  **Analysis.**  Generally, a patentee is "entitled to damages
from the time when it either began marking its products in
compliance with section 287(a) or when it actually notified [the
infringer] of its infringement, whichever was earlier."  American
Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523,
1537 (Fed. Cir. 1993).[1]  LendingTree contends that, because IMX

---

[1]Section 287(a) of Title 35 of the United States Code
provides, in relevant part, that

> [p]atentees, and persons making or selling any
> patented article for or under them, may give
> notice to the public that the same is patented,
> either by fixing thereon the word "patent" or
> the abbreviation "pat.", together with the
> number of the patent, or when from the character
> of the article, this can not be done, by fixing
> to it, or to the package wherein one or more of
> them is contained, a label containing a like
> notice.  In the event of failure to so mark,
> no damages shall be recovered by the patentee
> in any action for infringement, except on proof

failed to provide LendingTree with either constructive or actual

notice of infringement prior to filing suit, IMX's damages are

limited to those occurring on or after November 24, 2003.

7.   In response to LendingTree's motion, IMX argues that it

had no duty to mark because it does not make, offer for sale or

sell any "patented article."  According to IMX, "the patented

invention" is a "system" that "allows" a "unique interactivity"

to occur remotely over the Internet.[2]  Although the patented

system is made up of a variety of discrete components,

specifically the database and the transaction server, IMX does

not make, offer for sale or sell any of these remote components.

Indeed, according to IMX, "although borrowers and lenders can

remotely interact with this database and transaction server via

the Internet, neither party physically views either component at

any time. . . .  Thus, marking either of these components would

not serve the public interest notice function of Section 287."

(D.I. 191 at 2-3)  With respect to the only "tangible" aspect of

_____

> that the infringer was notified of the
> infringement and continued to infringe thereafter,
> in which event damages may be recovered only for
> the infringement occurring after such notice.

[2]IMX describes its patented "IMX Exchange" as "a distributed
database system that allows remote client devices, through
communication with a transaction server, to post loan profiles
to the database, search those loan profiles, submit bids on those
loan profiles and accept or reject those bids.  All of this
interaction occurs over the Internet."  (D.I. 191 at 1)

the system, IMX argues that its website does not embody claim 19

(or any other claim) of the '947 patent, but is "simply the way

in which parties to a loan transaction obtain a service that IMX

provides using its patented method and apparatus.  The website is

not a patented article, nor is it a package containing a patented

article.  Accordingly, IMX has no duty to mark its website."

(Id.)

8.  As described by the United States Court of Appeals for

the Federal Circuit, "[t]he marking statute serves three related

purposes:  1) helping to avoid innocent infringement . . .; 2)

encouraging patentees to give notice to the public that the

article is patented . . .; and 3) aiding the public to identify

whether an article is patented . . . ."  Nike, Inc. v. Wal-Mart

Stores, Inc., 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations

omitted).  The United States Supreme Court faced early on the

problem of how to give the public such notice of "intangible"

inventions, such as methods.  In Wine Ry. Appliance Co. v.

Enterprise Ry. Equipment Co., 297 U.S. 387 (1936), the Court held

that marking "can only be given in connection with some

fabricated article"; patentees "who did not produce" a patented

article were not required to give notice to an infringer before

damages could be recovered.  Id. at 394.  In exploring this

question further, the Federal Circuit has more recently explained

that

> [t]he reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed to only a method or process there is nothing to mark. Where the patent contains both apparatus and method claims, however, **to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given**, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).

Am. Med. Sys., 6 F.3d at 1538-39 (emphasis added).

9.   Based on the evidence of record, the commercial embodiment of the patented invention, the "IMX Exchange" system, is currently accessed and used through the IMX website.[3] Although IMX does not make or sell the computer components through which its patented system is processed, and although the IMX website itself is not the patented invention, nevertheless, consistent with the purpose of § 287(a) as interpreted by the Federal Circuit, the website is intrinsic to the patented system and constitutes a "tangible item to mark by which notice of the asserted method claims can be given".[4] Therefore, IMX had the duty to mark if it is claiming pre-litigation damages. See Soverain Software LLC v. Amazon.com, Inc., 383 F. Supp. 2d 904,

---

[3]In this regard, IMX has produced screens from LendingTree's website to prove that the accused system infringes the '947 patent.

[4]There is no meaningful distinction between a patented method that results in a product that can be marked and a patented system that results in a service implemented through an Internet-based website that can be marked.

911 (E.D. Tex. 2005).[5]

10.  As an alternate argument, IMX contends that it has
complied with the marking requirements of § 287(a) by including
on its website access to the `947 patent.  The question is
whether such access provides sufficient notice to pass muster
under the statute.  The court concludes that it has not provided
a sufficiently clear nexus between the `947 patent and the
patented "system".  On the two website pages where IMX patents
are mentioned, "IMX Exchange" refers to the corporate entity, not
the patented system; the patented technology is described as
"unique loan information and real-time trading system".  Where
"patented technology" is mentioned in connection with IMX
products, it refers to "patented **pricing** technology" or "patented
technology" for the "Private Label for Lenders" product, as
opposed to the "IMX® Exchange for Lenders" product.  IMX,
therefore, has failed to give the public adequate notice that its

---

[5]Counsel for IMX attempts to distinguish the Soverain case
from the facts at bar by stating that "the asserted patents in
the Soverain case cover Internet-implemented inventions,"
"Internet-based, Internet-driven patents."  (D.I. 215 at 111-12)
Of course, it is clear that the commercial embodiment of the `947
patent is "Internet-based" and "Internet-implemented".  The fact
that other embodiments of the patent need not be based on the
Internet is of no import.  The point of public access to the
patented invention of the `947 patent since March 2000 has been
through IMX's website; therefore, marking the patent on the
website is required.

"IMX Exchange" system is protected by the '947 patent.


_____
United States District Judge