IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IMX, INC.,                     )
                               )
          Plaintiff,           )
                               )
     v.                        )  Civ. No. 03-1067-SLR
                               )
LENDINGTREE, LLC,              )
                               )
          Defendant.           )

---

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of
Potter Anderson & Corroon LLP, Wilmington, Delaware.  Counsel for
Plaintiff.  Of Counsel: John Allcock, Esquire, M. Elizabeth Day,
Esquire, William G. Goldman, Esquire, and Christine K. Corbett,
Esquire, of DLA Piper Rudnick Gray Cary US LLP, East Palo Alto,
California.

Jack B. Blumenfeld, Esquire, and Julia Heaney, Esquire, of
Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.  Counsel
for Defendant.  Of Counsel: Holmes J. Hawkins, Esquire, A. Shane
Nichols, Esquire, and James J. Mayberry, Esquire, of King &
Spalding, Atlanta, Georgia.

---

**MEMORANDUM OPINION**

Dated: December 16 , 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On November 24, 2003, plaintiff IMX, Inc. ("IMX") filed this
action against defendant LendingTree, LLC ("LendingTree"),
alleging infringement of U.S. Patent No. 5,995,947 ("the '947
patent").

Currently before the court are the parties' motions for
summary judgment with regard to infringement and invalidity.
(D.I. 155, 163, 166)  On September 8, 2005, the court heard oral
arguments on these motions.  The court has jurisdiction over
these matters pursuant to 28 U.S.C. § 1338.

## II.   BACKGROUND

The '947 patent generally relates to "a method and system
for trading loans in real-time by making loan applications, such
as home mortgage loan applications, and placing them up for bid
by a plurality of potential lenders."  '947 patent, abstract.
The '947 patent was originally filed as Application 08/928,559 on
September 12, 1997 and was granted on November 30, 1999.

Claims 2-18 of the '947 patent depend from claim 1,[1] while

---

[1]Claim 1 of the '947 patent states, "A method for processing
loan applications, said method including steps of maintaining a
database of pending loan applications and their statuses at a
database server, wherein each party to a loan can search and
modify that database consistent with their role in the
transaction by requests to said server from a client device
identified with their role."  '947 patent, col. 14, l. 66 - col.
15, l. 5.

claims 20-38 of the '947 patent depend from claim 19.[2]    In an

order which has issued concurrently with this memorandum opinion,

the court has construed the disputed terms "loan application" and

"bid" as used in the limitations of several of these claims.

      The accused system, the LendingTree Exchange, is an online

system designed to connect borrowers to lenders for the purpose

of exchanging loan products.[3]

## III. STANDARD OF REVIEW

      A court shall grant summary judgment only if "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

---

      [2]Claim 19 of the '947 patent states, "A system for
processing loan applications, said system including a database of
pending loan applications, said database including status
information regarding said pending loan applications; a
transaction server, said transaction server being responsive in
real time to requests from parties to said pending loan
applications, said requests including requests for searching and
requests for modifying said database consistent with roles for
said parties."  '947 patent, col. 15, l. 59 - col 16, l. 2.

      [3]During a period between 1998 and 2000, LendingTree also
provided a technology known as "Lend-X" to several companies
under a private-label agreement.  With regard to its infringement
allegations, IMX asserts that "the functionality of Lend-X is the
same as that of the LendingTree Exchange" and argues that the
Lend-X product also infringes several claims of the '947 patent.
(D.I. 156 at 7)  LendingTree agrees that, for purposes of the
motions for summary judgment of infringement, there are no
material differences between Lend-X and the LendingTree Exchange.
(D.I. 186 at 4)  Accordingly, the court's analysis of the
LendingTree Exchange will also apply to Lend-X when considering
the motions for summary judgment of infringement.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving

party is entitled to judgment as a matter of law.  See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.  DISCUSSION

### A.  Infringement

A patent is infringed when a person "without authority
makes, uses or sells any patented invention, within the United
States . . . during the term of the patent."  35 U.S.C. § 271(a).
A court should employ a two-step analysis in making an
infringement determination.  Markman v. Westview Instruments,
Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  First, the court must
construe the asserted claims to ascertain their meaning and
scope.  Id.  Construction of the claims is a question of law
subject to de novo review.  See Cybor Corp. v. FAS Techs., 138
F.3d 1448, 1454 (Fed. Cir. 1998).  The trier of fact must then
compare the properly construed claims with the accused infringing
product.  Markman, 52 F.3d at 976.  This second step is a
question of fact.  See Bai v. L & L Wings, Inc., 160 F.3d 1350,
1353 (Fed. Cir. 1998).  The patent owner has the burden of
proving infringement and must meet its burden by a preponderance
of the evidence.  SmithKline Diagnostics, Inc. v. Helena Lab.
Corp., 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

Literal infringement occurs where each limitation of at
least one claim of the patent is found exactly in the alleged
infringer's product.  Panduit Corp. v. Dennison Mfg. Co., 836

4

F.2d 1329, 1330 n.1 (Fed. Cir. 1987). An accused product that does not literally infringe a claim may still infringe under the doctrine of equivalents. For there to be infringement under the doctrine of equivalents, the accused product or process must embody every limitation of a claim, either literally or by an equivalent. See Sextant Avionique, S.A. v. Analog Devices, Inc., 172 F.3d 817, 826 (Fed. Cir. 1999); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 41 (1997). An element is equivalent if the differences between the element and the claim limitation are "insubstantial." Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999). One test used to determine "insubstantiality" is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation. Graver Tank, 339 U.S. at 608. This test is commonly referred to as the "function-way-result" test. The mere showing that an accused device is equivalent overall to the claimed invention is insufficient to establish infringement under the doctrine of equivalents. Id.

**1. IMX's Motion for Summary Judgment of Infringement**

IMX begins its argument for summary judgment of infringement by asserting that the LendingTree Exchange literally infringes the '947 patent. IMX premises this contention primarily upon the alleged infringement by the LendingTree Exchange of independent

5

claims 1 and 19. Pursuant to this argument, IMX contends that the LendingTree Exchange is a system for processing loan applications. The court has construed the term "loan application" to mean "a request for an extension of credit in a format that contains sufficiently detailed information to enable a lender to grant or deny the request." IMX asserts that the LendingTree Exchange allows borrowers to fill out a form (which LendingTree refers to as a "qualification form") that "collects significant personal information, financial information, and information about the loan and property – everything that is required for a lender . . . to make a decision on whether to extend an offer (i.e., make a bid) on a loan to a prospective borrower." (D.I. 156 at 11) For ease of reference, the court will refer to the LendingTree Exchange qualification form as the "Qualification Form." LendingTree maintains that the Qualification Form "does not require or permit a prospective borrower to submit enough information to enable a lender to make a decision to extend credit." (D.I. 167 at 12) Thus, the scope of information contained in the Qualification Form is a central issue in the infringement analysis.

The '947 patent details the characteristics of a loan application and notes that a "loan profile" is included in each loan application. ('947 patent, col. 3, ll. 46-52) The '947 patent describes the minimum amount of information to be included

6

in a loan profile in the preferred embodiment.  ('947 patent,
col. 3, ll. 53-67)  This information includes:  (1) information
about the loan including loan category, amount, type, and
duration; (2) information about the property including type,
location, address, asking price, and appraised value; and (3)
information about the borrower including income, assets, credit
history, and other negative financial information.  (Id.)  While
this description is not conclusive evidence as to the precise
scope of the limitations of the claims, it provides the court
with some guidance on this issue.  Based on the evidence
presented by the parties, the Qualification Form does not require
the borrower to enter a property address, and only basic
financial information need be entered by the borrower.  (D.I.
167, ex. G)  This suggests that the Qualification Form would not
contain sufficient information to even be classified as a loan
profile under the '947 patent and, therefore, does not constitute
a loan application.

LendingTree has offered the testimony of its expert, Mr.
Scott M. Cooley, who has stated that the Qualification Form is
not a loan application because, among other reasons, it does not
include the minimum amount of information needed for a lender to
make any commitment to a loan applicant.  (D.I. 167, ex. I at 7-
10)  As stated by Ms. Alexandra Shin, the vice president of one
of the lenders who utilizes the LendingTree Exchange,

Qualification Forms "do not contain enough information to allow [it] to decide whether to extend credit to that particular consumer" because the forms do not include information such as a credit report, credit score, property appraisal, income documentation, or other forms of information verification. (D.I. 186 at ex. D) IMX refutes this evidence. According to the testimony of IMX's expert, Dr. Martin Kaliski, the Qualification Form contains a sufficient amount of information to enable a lender to decide whether to grant a loan to a specific borrower. (D.I. 158 at ¶ 15; ex. E) Based on this testimony, there remain genuine issues of material fact regarding whether the Qualification Form is a loan application.

Aside from the testimonial evidence offered as to whether the Qualification Form contains sufficient information for a lender to make a credit decision, several objective statements contained in the interface text of the LendingTree Exchange reveal that the use of the Qualification Form is not intended to be sufficient to enable a lender to make such a decision. A Prequalification Letter, which may be directed to a prospective borrower as a result of the borrower's submission of the Qualification Form, notes that "LendingTree is not a lending institution" and that the Prequalification Letter is "not a pre-approval." (D.I. 167, ex. N) In addition, although the LendingTree Exchange itself refers to the contents of a certain

8

communication from a lender to a prospective borrower as "Offer
Details," the text of the communication states that it "does not
constitute an actual commitment to lend or an offer to extend
credit."   (D.I. 167, ex. O)   Thus, based on the language it
conveys to customers, the LendingTree Exchange does not deal with
loan applications.

Similarly, the evidence offered suggests that information
provided to consumers by a lender in response to the submission
of the Qualification Form is not regarded by the lender as a
binding offer or a commitment to extend credit.   (D.I. 167, ex.
E)   Instead of intending such information as an offer in response
to a loan application, a lender would be providing the
information to a qualified consumer through the LendingTree
Exchange with the purpose of allowing the consumer to collect
quotes and compare loan products at a prequalification stage.
(Id.)

In continuing its assertion of literal infringement, IMX
contends that the LendingTree Exchange stores pending loan
applications and their status in a database connected to a
transaction server.   IMX completes its literal infringement
analysis by alleging that the LendingTree Exchange allows lenders
and borrowers to search the database consistent with their roles
in the transaction.   In making these arguments, IMX is alleging
infringement of dependent claims 2-8, 12, 18, 20-27, 30, 31 and

38. Summary judgment of infringement with respect to these
dependent claims cannot be granted since IMX has failed to
sufficiently demonstrate infringement of the independent claims 1
and 19, on which the dependent asserted claims rely.

Viewing the evidence in a light most favorable to
LendingTree, IMX has failed to sufficiently show that the
Qualification Form filled in by a borrower using the LendingTree
Exchange would include information in sufficient detail to allow
a lender to grant or deny a request for an extension of credit.
Based on the evidence adduced by the parties, a question remains
as to whether the LendingTree Exchange is a system for processing
loan applications. Consequently, a genuine issue of material
fact exists with respect to whether the LendingTree Exchange
literally infringes each of the asserted claims. IMX's motion
for summary judgment of infringement shall be denied as to
literal infringement.

IMX continues its infringement argument by alleging that,
even under LendingTree's preferred construction of the disputed
claims, the LendingTree Exchange infringes the '947 patent under
the doctrine of equivalents. As noted above, the LendingTree
Exchange would infringe the asserted claims of the '947 patent if
it performs substantially the same function, in substantially the
same way, and gives substantially the same result as the
invention claimed in the '947 patent. Even under this standard,

10

however, IMX has failed to prove infringement under the doctrine of equivalents.

First, the evidence suggests that the Qualification Form utilized in the LendingTree Exchange does not function like that of a loan application under the '947 patent. As explained under the court's analysis of literal infringement, submission of a Qualification Form does not appear to serve as a request for an extension of credit, nor is sufficient information contained in the Qualification Form for a lender to make a credit decision. Second, the Qualification Form works in a different way than a loan application, since less data is included in a Qualification Form such that information verification and borrower approval are not possible as with a loan application. Finally, the Qualification Form causes a different result than a loan application. Instead of allowing a consumer to be granted or denied a request for credit, the LendingTree Exchange enables a consumer to collect quotes and compare loan products at a prequalification stage.

Viewing the evidence in a light most favorable to LendingTree, genuine issues of material fact exist on the question of whether there are insubstantial differences between the LendingTree Exchange and the claimed invention of the '947 patent. As a result, a genuine issue of material fact remains with respect to whether the LendingTree Exchange infringes the

11

asserted claims of the '947 patent under the doctrine of equivalents. IMX's motion for summary judgment of infringement shall be denied in this regard.

## 2. LendingTree's Motion for Summary Judgment of Noninfringement

As noted above, a genuine issue of material fact exists as to whether the LendingTree Exchange is a system for processing loan applications such that it would infringe claim 1 of the '947 patent. In particular, IMX has raised several issues with respect to the precise nature of the Qualification Form. For example, IMX notes that in the glossary of the LendingTree website, the "qualification form" or "Q-form" is defined as a "series of questions that you complete in order to request a loan." (D.I. 188, ex. S) In addition, the same glossary defines an "application" as "[a] written statement of personal and financial information that is required to approve a loan." (Id.) As argued by IMX, these terms as defined by LendingTree would bring its Qualification Form within the scope of a "loan application." (D.I. 158, ex. E) While, in light of the full scope of evidence offered by the parties, these definitions do not provide irrefutable proof that the LendingTree Exchange has infringed the claims of the '947 patent, they do suggest that the question of whether the Qualification Form is a loan application remains as a genuine issue of material fact.

In addition, a question remains as to whether the

12

Qualification Form contains sufficient information to allow a lender to make a decision whether to grant or deny a request for credit. For example, LendingTree cites to the deposition of Alexandra Shin to suggest that the Qualification Form does not contain such information as a credit report or credit score, which Ms. Shin claimed are necessary to enable a lender to make a credit decision. (D.I. 186 at ex. D) However, the LendingTree website and its own witnesses suggest that LendingTree "pulls [a consumer's] credit report when [the consumer] complete[s] a loan request." (D.I. 188, ex. I at 6; ex. H at 55-56; ex. N at 20-21) This is another example of a genuine issue of material fact which remains unresolved in light of the evidence offered by the parties.

Viewing the evidence in a light most favorable to IMX, a genuine issue of material fact exists as to whether the LendingTree Exchange is a system for processing loan applications. Consequently, a genuine issue of material fact exists with respect to whether the LendingTree Exchange literally infringes each of the asserted claims. LendingTree's motion for summary judgment of noninfringement shall be denied.

**B. Invalidity**

LendingTree argues that claims 1-8, 11, 12, 18-27, 30, 31, and 38 of the '947 patent ("the asserted claims"), which IMX contends are infringed by the LendingTree Exchange, are invalid

13

under 35 U.S.C. § 102 as anticipated by the public use and/or publication of numerous prior art references. (D.I. 168) As an alternative argument, LendingTree contends that any differences between those prior art references and the asserted claims of the '947 patent are obvious in light of the prior art, such that the asserted claims are invalid for obviousness under 35 U.S.C. § 103. (Id.)

A patent is presumed valid and the burden of proving invalidity, whether under § 112 or otherwise, rests with the challenger. See 35 U.S.C. § 282. In order to overcome this presumption, the party challenging validity bears the burden of proving by clear and convincing evidence that the invention fails to meet the requirements of patentability. See Hewlett-Packard Co. v. Bausch & Lomb, 909 F.2d 1464, 1467 (Fed. Cir. 1990). Clear and convincing evidence is evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

Corroboration of a witness' oral testimony is required to invalidate a patent under 35 U.S.C. § 102. See Finnigan Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367 (Fed. Cir. 1999). This requirement exists regardless of whether the witness is an interested party or an uninterested party. See id. at 1367-68. Corroboration has been required by the courts "because of doubt

14

that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent." Id. at 1368.

## 1. Anticipation

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States."[4] A claim is anticipated only if each and every limitation as set forth in the claim is found, either expressly or inherently described, in a single prior art reference. Verdegaal Bros., Inc. v. Union Oil Co., 814 F.2d 628, 631 (Fed. Cir. 1987); Scripps, 927 F.2d at 1576 ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention.").

In determining whether a patented invention is explicitly

---

[4]Anticipation is also recognized under 35 U.S.C. § 102(e). As that subsection states,

> [a] person shall be entitled to a patent unless an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent . . . or a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.

35 U.S.C. § 102(e).

15

anticipated, the claims are read in the context of the patent specification in which they arise and in which the invention is described.  Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1554 (Fed. Cir. 1995).  The prosecution history and the prior art may be consulted if needed to impart clarity or to avoid ambiguity in ascertaining whether the invention is novel or was previously known in the art.  Id. The prior art need not be *ipsissimis verbis* (i.e., use identical words as those recited in the claims) to be anticipating. Structural Rubber Prods. Co. v. Park Rubber Co., 749 F.2d 707, 716 (Fed. Cir. 1984).

A single prior art reference also may anticipate a claim where one of ordinary skill in the art would have understood each and every claim limitation to have been disclosed inherently in the reference.  Continental Can Co. USA Inc. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991).  The Federal Circuit has explained that an inherent limitation is one that is necessarily present and not one that may be established by probabilities or possibilities.  Id.  That is, "the mere fact that a certain thing may result from a given set of circumstances is not sufficient." Id.  The Federal Circuit also has observed that "inherency operates to anticipate entire inventions as well as single limitations within an invention."  Schering Corp. v. Geneva Pharms. Inc., 339 F.3d 1373, 1380 (Fed. Cir. 2003).  Moreover,

16

recognition of an inherent limitation by a person of ordinary skill in the art before the critical date is not required to establish inherent anticipation.  Id. at 1377.

"The statutory phrase 'printed publication' has been interpreted to mean that, before the critical date, the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.'"[5]  In re Cronyn, 890 F.2d 1158, 1160 (Fed. Cir. 1986).  Whether something is a "printed publication" is determined on a case by case basis, requiring inquiry into the facts and circumstances of the references' disclosure to the public.  In re Klopfenstein, 380 F.3d 1345, 1350 (Fed. Cir. 2004).

A court should also consider whether or not the "printed publication" was the subject of confidentiality agreements or whether the disclosing party had "a reasonable expectation that the information [would] not be copied."  In re Klopfenstein, 380 F.3d at 1351.  "Professional and behavioral norms [that] entitle a party to a reasonable expectation that the information displayed will not be copied" can also be evidence that something

---

[5]The relevant "public" consists of those individuals who would be interested in the invention, or the relevant art.  Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc., 291 F.3d 1317, 1324 (Fed. Cir. 2002).

17

is not a "printed publication." Id. On the other hand,
"evidence of business practice that was sufficient to prove [a
document] was widely available and accessible to the interested
public" can be sufficient to prove that the document was publicly
accessible. Constant v. Advanced Micro-Devices, Inc., 848 F.2d
1560, 1569 (Fed. Cir. 1988).

An anticipation inquiry involves two steps. First, the
court must construe the claims of the patent in suit as a matter
of law. Key Pharms. v. Hercon Labs Corp., 161 F.3d 709, 714
(Fed. Cir. 1998). Second, the finder of fact must compare the
construed claims against the prior art. Id. A finding of
anticipation will invalidate the patent. Applied Med. Res. Corp.
v. U.S. Surgical Corp., 147 F.3d 1374, 1378 (Fed. Cir. 1998).

### a.   Mortgage Analysis Reporting System

LendingTree argues that the asserted claims of the '947
patent are anticipated under 35 U.S.C. § 102(b) due to the prior
public use and sale of the Mortgage Analysis Reporting System
("MARS") more than a year before the filing of the '947 patent.
LendingTree contends that several prior art publications
describing MARS corroborate the evidence of prior public use and
also independently anticipate the asserted claims.

The first argument by LendingTree for anticipation of the
'947 patent by the MARS prior art is based on the alleged public
use and sale of MARS. As noted above, a prior art reference must

contain each and every limitation of a claim (either expressly or
inherently described) in order to anticipate the claim;
similarly, there must be no difference between the claimed
invention and the referenced prior art for the claimed invention
to be anticipated.

LendingTree identifies five items of evidence to demonstrate
that MARS contains each and every limitation of the asserted
claims of the '947 patent:  1) Deposition testimony of Allan
Redstone; 2) Expert report of Mr. Scott M. Cooley; 3) MARS Point
of Sale Reference Manual; 4) "Marketing Mortgages on MARS"; and
5) "GHR Services, Inc., MARS System Administration (1993-94)".[6]
Having reviewed all of this evidence to determine whether MARS is
anticipatory, the court concludes that genuine issues of material
fact exist as to whether the public use and sale of MARS
anticipates the asserted claims.  For example, "Marketing
Mortgages on MARS" was published in Mortgage Banking Magazine in
November of 1992.  LendingTree contends that the article, by

---

[6]To the extent that LendingTree asserts that any of these
items of evidence themselves are anticipatory prior art, the
court finds that 4 of 5 are not, as a matter of law.  In the
first instance, the uncorroborated testimony of Mr. Redstone
cannot be anticipatory; likewise, anticipation by a **single** prior
art reference cannot be met by Mr. Redstone's testimony if
corroborated by **additional** evidence.  Neither can the expert
testimony of Mr. Cooley be anticipatory prior art.  With respect
to the MARS Point of Sale Reference Manual and the "GHR Services,
Inc., MARS System Administration (1993-94)" reference, the record
does not demonstrate that either of these references were printed
publications.  (D.I. 168 at 2, 14; ex. B at 71-72, 166-168, 177;
ex. E at 1)

describing the components of the MARS system and detailing the
distribution of information in that system, anticipates the
claims of the '947 patent.  (D.I. 168 at 16)  LendingTree
premises its argument primarily on the expert report of Mr.
Cooley.  (D.I. 168, ex. C)  IMX counters LendingTree by citing
the declaration of Dr. Martin Kaliski.  (D.I. 190, ex. 2)  The
contentions of Cooley and Kaliski greatly differ in the analyses
of the article's language.  For example, there are disagreements
as to whether the article discloses: (1) a database of pending
loan applications and their statuses; (2) each party to a loan
being able to search and modify the database in accordance with
their role; and (3) a real-time system.  As a result of these
largely uncorroborated contentions, there remains a genuine issue
of material fact as to whether the MARS prior art discloses
several required limitations of the asserted claims and
anticipates those claims under § 102(b).

## b.   Contour Mortgage Software Products

LendingTree next asserts that the public use and sale of a
suite of Contour mortgage software products ("Contour Products")
anticipate the asserted claims of the '947 patent under 35 U.S.C.
§ 102(b).  LendingTree argues that the Contour Products include
The Loan Handler, The Loan Tracker, and The Loan Finder.  (D.I.
168 at 21)  LendingTree identifies six sources of evidence to
support its argument that the Contour Products include each and

every limitation of the asserted claims of the '947 patent: 1) the testimony of Mr. Cooley; 2) The Loan Handler Manual; 3) The Loan Tracker Manual; 4) The Loan Finder brochure; 5) the testimony of Mr. Michael Beck; and 6) the testimony of Mr. Mark Adams.   In addition, LendingTree contends that the prior publication of the LendingTree Manual is itself an anticipatory reference.[7]  (D.I. 168 at 27)   After reviewing the evidence to assess whether the Contour Products are anticipatory, the court concludes that genuine issues of material fact exist as to whether the public use and sale of the Contour Products anticipate the asserted claims.   For example, the evidentiary sources cited by LendingTree to suggest that each party to a loan who uses the Contour Products is able to search and modify stored information regarding the loan are directly refuted by the evidence contained in the declaration of Dr. Kaliski. (D.I. 190, ex. 2 at ¶¶ 70-106)   Moreover, through their deposition testimony, Mr. Beck and Mr. Adams each independently admit that the Contour Products were designed to be used by a single company and would not allow anyone outside the company to access or modify any information created by the Contour Products, such as loan applications.   (D.I. 168, ex. L at 72-85, 90-95; ex. M at

---

[7]With respect to The Loan Handler Manual, the record does not demonstrate that this reference was a printed publication. LendingTree offers no evidence to show that sufficient dissemination of and public accessibility to this had ever taken place for it to constitute a printed publication.

21

92-94) This testimony suggests that the Contour Products'
restrictions on access to stored information regarding the loan
would prevent each party to the loan from conducting activities
which are required limitations of the asserted claims of the '947
patent.

### c. Mortrade User's Manual

LendingTree asserts that the Mortrade User's Manual, which
was released in December 1990 and "discloses a software program
and computer system that allows mortgages to be brought [sic] and
sold over a network", anticipates claims 1-8, 11-12, 19-27 and 30
of the '947 patent. (D.I. 168 at 29) However, the evidence
suggests that the Mortrade system does not use a transaction
server which is responsive in real-time, as required under the
limitations of claim 19 of the '947 patent. LendingTree's expert
notes that the Mortrade system facilitates a real-time response
only by accessing a local copy of database information which is
apart from the transaction server. (D.I. 168, ex. C at ¶ 249)
In addition, LendingTree only offers evidence to show that the
Mortrade User's Manual was released in 1990; there is no proof of
record that it was sufficiently accessible to the public to be a
printed publication. In fact, as IMX points out, the Mortrade
User's Manual was designated "Highly Confidential - Attorneys
Eyes Only" under the protective order of this case, suggesting
that it is a confidential document that was not and is not

22

publicly accessible.  (D.I. 190 at 22)  Based on the evidence
adduced by the parties with respect to the content and
publication of the Mortrade User's Manual, the court denies
LendingTree's motion for summary judgment of invalidity and finds
that the Mortrade User's Manual was not a printed publication for
purposes of invalidating the claimed invention.

### d.   "Canada's Electronic Mortgage Market"

LendingTree next asserts that the prior publication of the
article "Canada's Electronic Mortgage Market" is an anticipatory
reference for the asserted claims of the '947 patent under §
102(b).  (D.I. 168 at 32-33)  That article was published in
Mortgage Originator in July of 1996 and describes a software
package known as the Mortgage Market.  (Id.)

Insufficient evidence has been offered by LendingTree to
prove that the asserted claims are anticipated by this article.
The article fails to disclose that, when using the Mortgage
Market, each party to a loan can search and modify the database
consistent with their role as required under the asserted claims.
For instance, the article notes that lenders download information
from a central location to their local machines, but no mention
is made of whether the lenders can search and modify this
information.  (D.I. 168, ex. C at tab 6)  In addition, the
article does not demonstrate or claim that the Mortgage Market is
a real-time system, as required under the limitations of the

23

asserted claims.  In fact, the method of data transfer specified
in the article is that of batch uploads and batch downloads of
information, which even LendingTree's expert admits is not a
real-time process.  (Id. at 16-17; D.I. 168, ex. C at ¶ 47)   In
evaluating this evidence, the court denies LendingTree's motion
for summary judgment as it relates to the "Canada's Electronic
Mortgage Market" reference.

### e.   "Hang On For A Wild Ride"

LendingTree argues that the article "Hang On For A Wild
Ride", published in Mortgage Broker Magazine in February of 1995,
is a §102(b) prior art reference which anticipates the '947
patent due to its publication before the patent's priority date.
However, LendingTree has failed to show by clear and convincing
evidence that the article discloses several limitations of the
asserted claims.  For instance, the article does not disclose
that each party to a loan can search and modify a database of
pending loan applications in accordance with their role, which is
a required element of every asserted claim.  (D.I. 168, ex. C,
tab 7)  Based on the evidence offered, the article does not
disclose a database capable of accepting query information,
instead describing a posting of loan packages to an electronic
bulletin board.  (Id.)  In the system described by the article,
information about loans would be posted to a file on an
electronic bulletin board, and the parties to the loan would

24

communicate directly with one another such that no searching or
modification of a database by each of the parties would take
place.  (Id.)  The court denies LendingTree's motion for summary
judgment as it relates to the "Hang On For A Wild Ride" article.

### f.    "Sizing Up the New Networks"

Similar to its contention regarding "Hang On For A Wild
Ride," LendingTree offers an argument for anticipation with
reference to the article "Sizing Up the New Networks", published
in Mortgage Banking Magazine in December of 1994.  LendingTree
has failed to show that "Sizing Up the New Networks" anticipates
the asserted claims under § 102(b).  One of the limitations of
the asserted claims which the article fails to disclose is "a
database of pending loan applications and their statuses", which
is a required element of every asserted claim.  The article
discloses value-added networks and notes the potential of e-mail
communications to be used with such networks, but the use of a
database of pending loan applications is not specifically
suggested.  (D.I. 168, ex. C, tab 5)  The article also does not
specify whether the value-added networks it describes would be
"responsive in real time to requests from parties" for searching
and modifying stored information, which is another required
limitation to the asserted claims of the '947 patent.  The court
denies LendingTree's motion for summary judgment as it relates to
the "Sizing Up the New Networks" reference.

### g.    U.S. Patent No. 5,966,699

In addition to its anticipation arguments under 35 U.S.C. §
102(b), LendingTree claims that there are prior art references
which anticipate the asserted claims of the '947 patent under 35
U.S.C. § 102(e). LendingTree asserts that U.S. Patent No.
5,966,699 ("the '699 patent"), issued on October 12, 1999 and
based on an application filed on October 11, 1996, is an example
of §102(e) prior art. (D.I. 168 at 33-37)  Pursuant to this
argument, LendingTree contends that the asserted claims of the
'947 patent are anticipated by the '699 patent if IMX fails to
show that the '947 patent had an actual invention date that
predates the filing of the '699 patent.  (Id.)  IMX offers
evidence that two of the three inventors of the '947 testified
under oath that the invention which is the subject of the '947
patent was conceived no later than July 15, 1995 and reduced to
practice in November 1995.  This unrefuted testimonial evidence,
for which IMX offers documentary corroboration, suggests that the
priority date of the '947 patent for purposes of § 102(e) is July
15, 1995.  (D.I. 190 at 6)  While LendingTree contends that this
evidence "does not show early conception or reduction to practice
for a number of claim elements," no evidence is offered on this
point.  (D.I. 204 at 20)  Thus, the court finds that the '699
reference is not a valid prior art reference and LendingTree
shall be precluded from asserting that the '699 patent is prior

art for purposes of anticipation and obviousness.

## 2.  Obviousness

To establish that a patent claim is obvious, clear and
convincing evidence must exist to show that "the subject matter
as a whole would have been obvious at the time the invention was
made to a person having ordinary skill in the art."  35 U.S.C. §
103 (2003).  The question of obviousness, therefore, turns on
four factual inquiries:  (1) the scope and content of the prior
art; (2) the level of ordinary skill in the art; (3) the
differences between the claimed invention and the prior art; and
(4) any objective indicators of non-obviousness, more commonly
termed secondary considerations.  See Graham v. John Deere Co.,
383 U.S. 1, 17-18 (1966); B.F. Goodrich Co. v. Aircraft Braking
Sys. Corp., 72 F.3d 1577, 1582 (Fed. Cir. 1996).  The existence
of each limitation of a claim in the prior art does not, by
itself, demonstrate obviousness.  Instead, there must be a
"reason, suggestion, or motivation in the prior art that would
lead one of ordinary skill in the art to combine the references,
and that would also suggest a reasonable likelihood of success."
Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc., 183 F.3d
1347, 1356 (Fed. Cir. 1999).  "Such a suggestion or motivation
may come from the references themselves, from knowledge by those
skilled in the art that certain references are of special
interest in a field, or even from the nature of the problem to be

solved." Id. at 1356.

To rebut a prima facie case of obviousness based on prior art, objective evidence of nonobviousness may be used. Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1360 (Fed. Cir. 1999). This objective evidence includes: (1) a long-felt and unmet need in the art for the invention; (2) failure of others to achieve the results of the invention; (3) commercial success of the invention; (4) copying of the invention by others in the field; (5) whether the invention was contrary to accepted wisdom of the prior art; (6) expression of disbelief or skepticism by those skilled in the art upon learning of the invention; (7) unexpected results; (8) praise for the invention by those in the field; and (9) independent invention by others. See Graham, 383 U.S. at 17-19. "The objective evidence of nonobviousness . . . should when present always be considered as an integral part of the analysis." Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1393 (Fed. Cir. 1988) (quoting W.L. Gore & Assocs. Inc. v. Garlock, Inc., 721 F.2d 1540, 1555 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984)).

LendingTree, as an alternative argument to each of its anticipation contentions, maintains that each of the prior art references render obvious the asserted claims of the '947 patent. (D.I. 204 at 10) In advancing this argument, LendingTree asserts that the prior art references, when considered individually or in

28

combination with one another, make the '947 patent obvious to one of ordinary skill in the art.  (Id.)

As its first contention regarding obviousness, LendingTree argues that the asserted claims of the '947 patent are invalid as obvious in light of the prior public use of the MARS system and the publications regarding MARS.  With respect to a compelling reason, suggestion, or motivation that would lead one of ordinary skill in the art to combine the references, LendingTree asserts that "all of the cited prior art are directly related to a common and very specific field . . . and one of ordinary skill in the art would recognize that implicit in each reference is a suggestion to combine it with another reference to arrive at the invention of the '947 patent."  (D.I. 204 at 11)  However, LendingTree identifies no evidence that would suggest a reasonable likelihood of success based on the combination of these prior art references.

With respect to the secondary considerations which the court considers in its obviousness analysis, LendingTree relies on the expert report of Mr. Cooley to suggest the absence of the following criteria:  (1) a long-felt and unmet need in the art for the claimed invention; (2) commercial success of the claimed invention; (3) copying of the invention by others in the field; and (4) unexpected results.  (D.I. 168 at 20)  IMX argues that there was a long-felt need for the claimed invention and argues

that both parties have enjoyed commercial success due to the '947 patent. (D.I. 190 at 14)  IMX additionally cites several sources to assert the presence of the following criteria:  (1) the failure of others to achieve the results of the claimed invention; and (2) praise for the claimed invention by those in the field.  (Id.)  Ultimately, each party accentuates different secondary considerations for the evaluation of the court, but neither party provides a reason why the evaluation of a particular consideration should carry weight in the court's decision on the issue of obviousness.  There are genuine issues of material fact in this regard.

LendingTree next contends that the prior public use and sale of the Contour Products and Contour manuals render the asserted claims obvious.  In this way, LendingTree advances a similar argument to the one that it offered for the MARS prior art references.  The specific motivation to combine the Contour prior art references with one another or with other references is not substantiated, and the court is presented with no evidence to suggest that the combination of any references would possess a reasonable likelihood of success.

LendingTree contends that the prior publication of the articles "Canada's Electronic Mortgage Market", "Sizing Up the New Network", and "Hang On for a Wild Ride" render the asserted claims of the '947 patent obvious under § 103.  While these prior

30

art references provide relevant information regarding the scope
and content of the prior art at several points in time, no clear
evidence is cited to either suggest a motivation to combine these
references or qualify whether any combination would make obvious
the invention detailed in the '947 patent.

The court concludes that there are genuine issues of
material fact as to whether the prior art references cited by
LendingTree make obvious the asserted claims of the '947 patent.

Due to the genuine issues of material fact which remain with
respect to whether each of the asserted claims of the '947 patent
are anticipated or rendered obvious by the cited prior art
references, IMX's cross motion for summary judgment of validity
shall be denied in part.

## V.   CONCLUSION

For the reasons stated, IMX's motion for summary judgment of
infringement is denied, LendingTree's motion for summary judgment
of noninfringement is denied, IMX's cross motion for summary
judgment of patent validity is denied and LendingTree's motion
for summary judgment of patent invalidity is denied.   An order
consistent with this memorandum opinion shall issue.

31