IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IMX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 03-1067-SLR |
| | ) | |
| LENDINGTREE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of
Potter Anderson & Corroon LLP, Wilmington, Delaware.  Counsel for
Plaintiff.  Of Counsel: John Allcock, Esquire, M. Elizabeth Day,
Esquire, William G. Goldman, Esquire, and Christine K. Corbett,
Esquire, of DLA Piper Rudnick Gray Cary US LLP, East Palo Alto,
California.

Jack B. Blumenfeld, Esquire, and Julia Heaney, Esquire, of
Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.
Counsel for Defendant.  Of Counsel: Holmes J. Hawkins III,
Esquire, A. Shane Nichols, Esquire, and James J. Mayberry,
Esquire, of King & Spalding LLP, Atlanta, Georgia.

_____

**OPINION**

Dated: January 10, 2007
Wilmington, Delaware

ROBINSON, Chief J.

## I.   INTRODUCTION

A bench trial was held on defendant's defense and
counterclaim that U.S. Patent No. 5,995,947 ("the '947 patent")
is unenforceable as a result of inequitable conduct.  The issue
was fully briefed post-trial.  (D.I. 268, 278, 282)  The court
has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,
1338(a) and 2201(a).  Having considered the documentary evidence
and testimony, the court makes the following findings of fact and
conclusions of law pursuant to Federal Rule of Civil Procedure
52(1).[1]

## II.   **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### A.   **Procedural History**

1.   IMX, Inc. ("plaintiff") filed the above-captioned action
for infringement of the '947 patent on November 24, 2003.  (D.I.
1)  In this case, defendant was accused of infringing claims 1-8,
11-12, 18-27, 30-31, and 38 of the '947 patent on each of the
asserted claims.  A jury trial on issues of infringement,
validity, willfulness, and damages was held from January 11, 2006
through January 20, 2006.  The jury returned a verdict for
plaintiff of literal infringement of the '947 patent, against
LendingTree LLC ("defendant") on invalidity of the '947 patent,
and for plaintiff on willfulness.  (D.I. 246)

---

[1]Plaintiff's motion for leave to file a surreply on
inequitable conduct issues is denied.  (D.I. 285)

2.   The court held a bench trial regarding LendingTree's inequitable conduct defense and counterclaim on January 12 and 18, 2006.

**B.   The Patents In Suit and the Technology at Issue**

3.   The '947 patent was originally filed as U.S. Application No. 08/928,559 ("the '559 application") on September 12, 1997, and issued on November 30, 1999.

4.   The '947 patent generally relates to a method and system for trading loans in real time by making loan applications and placing them up for bid by potential lenders.  Claim 1 of the '947 patent reads:[2]

> A method for processing loan applications, said method including steps of maintaining a database of pending loan applications and their statuses at a database server, wherein each party to a loan can search and modify that database consistent with their role in the transaction by requests to said server from a client device identified with their role.

5.   Since 1997, IMX has marketed and sold software under the name "IMX Exchange."  IMX markets the IMX Exchange software to loan brokers and wholesale lenders.  Loan brokers use the IMX

---

[2]Claims 2-18 depend from claim 1, while claims 20-38 depend from claim 19.  Claim 19 reads:
A system for processing loan applications, said system including a database of pending loan applications, said database including status information regarding said pending loan applications; a transaction server, said transaction server being responsive in real time to requests from parties to said pending loan applications, said requests including requests for searching and requests for modifying said database consistent with roles for said parties.

Exchange software to, among other things, input loan applications on behalf of borrowers, transmit those loan applications to the Exchange, and retrieve bids on those loan applications from lenders who participate in the Exchange.  Lenders use the IMX Exchange software to, among other things, search for and place bids on loan applications of interest that are stored in the Exchange.

6.   The infringing system, the LendingTree Exchange, is an online system designed to connect borrowers to lenders for the purpose of exchanging loan products.  The LendingTree Exchange is operated at www.lendingtree.com, wherein potential borrowers complete LendingTree's Qualification Form in furtherance of obtaining a loan.

## C.  Prior Art References

7.   Defendant asserts that three prior art references constitute material information withheld from the U.S. Patent and Trademark Office ("PTO"):  (1) an article titled "Hang on for a Wild Ride," written by Scott Cooley, defendant's expert in the present case (the "Cooley article"); (2) the MixStar system, and (3) the Lender Interactive Online Network ("L.I.O.N.") system. (D.I. 268 at 2)  The MixStar and L.I.O.N. systems were referenced in the Cooley article.

8.   The Cooley article was published in Mortgage Broker Magazine in February of 1995, and addressed several developments

3

in the mortgage industry.  (DTX-37)  Under a section entitled

"Wholesaler Shopping," Mr. Cooley wrote:

> Another interesting advantage for mortgage brokers will be
> the ability to post completed loan packages to an electronic
> bulletin board.  Wholesalers will then be able to shop these
> files and bid on them.  Twenty-four hours later, the
> mortgage broker will pick the best among their favorite
> wholesalers.  There are two companies, MixStar and LION, who
> expect to have such systems up and running in the next few
> months.  These organizations represent a larger group of
> seven Value Added Networks (VANs) tailored to our industry.
> . . . [VANs] will begin to play an important part in
> everyday business as they go far beyond the bidding room
> capability.

(Id.)  The Cooley article proceeded to state:

> The [list] of features includes electronic mail (E-mail),
> electronic data exchange (EDI), loan product detail
> distribution, rate distribution, rate distribution, loan
> lock-in systems, loan status access, automated underwriting,
> fraud detection systems, statistical appraisal
> [capabilities], and communications with HUD.  Of all these
> features, the most important will be E-mail.

(DTX-37)  The Cooley article contains no further description of

either the MixStar or L.I.O.N. system.

## D.  Parties Charged with Inequitable Conduct

9.  Defendant asserts that Mr. Steven Fraser, a co-inventor

of the '947 patent, was aware of, but intentionally did not

disclose, the Cooley article to the PTO.  (D.I. 268 at 1-2)

## E.  Inequitable Conduct Standard

10.  Applicants for patents and their legal representatives

have a duty of candor, good faith, and honesty in their dealings

with the PTO.  Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178

(Fed. Cir. 1995); 37 C.F.R. § 1.56(a).  This duty is predicated

4

on the fact that "a patent is an exception to the general rule against monopolies and to the right of access to a free and open market." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 816 (1945). The duty of candor, good faith, and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to patent applicants or their attorneys which is material to the examination of a patent application. Elk Corp. of Dallas v. GAF Bldg. Materials Corp., 168 F.3d 28, 30 (Fed. Cir. 1999). A breach of this duty constitutes inequitable conduct. Molins, 48 F.3d at 1178.

11. If it is established that a patent applicant engaged in inequitable conduct with respect to one claim, then the entire patent application is rendered unenforceable. Kingsdown Med. Consultants v. Hollister Inc., 863 F.2d 867, 877 (Fed. Cir. 1988). Additionally, "[a] breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." Fox Indus., Inc. v. Structural Pres. Sys., Inc., 922 F.2d 801, 803-04 (Fed. Cir. 1990).

12. A finding of inequitable conduct is "an equitable determination" and, therefore, "is committed to the discretion of the trial court." Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1261 (Fed. Cir. 2001).

13. In order to establish unenforceability based on inequitable conduct, a defendant must establish by clear and convincing evidence that: (1) the omitted or false information was material to patentability of the invention; (2) the applicant had knowledge of the existence and materiality of the information; and (3) the applicant intended to deceive the PTO. Molins, 48 F.3d at 1178.

14. A determination of inequitable conduct follows a two-step analysis. The withholding of information must first meet threshold findings of materiality and intent. Id.

15. The Federal Circuit has recently stated that, prior to 1992, two standards for materiality were in effect: (1) the materiality standard set forth in the present version of PTO Rule 56, 37 C.F.R. § 1.56(b) (2004); and (2) the previous version of that rule. See Digital Control Inc. v. Charles Machine Works, 437 F.3d 1309, 1314 (Fed. Cir. 2006). The Court in Digital Control held that the new 1992 iteration of Rule 56 was not intended to replace the broader old Rule 56, and "merely provides an additional test of materiality." Id. at 1316. Therefore, "if a misstatement or omission is material under the new Rule 56 standard, it is material. Similarly, if a misstatement or omission is material under the 'reasonable examiner' standard or under the older three tests, it is also material." Impax Labs., Inc. v. Aventis Pharm. Inc., 468 F.3d 1366, 1374 (Fed. Cir. 2006)

6

(quoting Digital Control, 437 F.3d at 1316)).

16.   Rule 56 currently states:

Information is material to patentability when it is not
cumulative to information already of record or being made of
record in the application, and
(1) It establishes, by itself or in combination with other
information, a prima facie case of unpatentability of a
claim;   or
(2) It refutes, or is inconsistent with, a position the
applicant takes in:
(i) Opposing an argument of unpatentability relied on by the
Office, or
(ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b) (2006).   Further,

[a] prima facie case of unpatentability is established when
the information compels a conclusion that a claim is
unpatentable under the preponderance of evidence,
burden-of-proof standard, giving each term in the claim its
broadest reasonable construction consistent with the
specification, and before any consideration is given to
evidence which may be submitted in an attempt to establish a
contrary conclusion of patentability.

Id.

17.   The inquiry presented under the prior "reasonable

examiner" standard is whether "a reasonable examiner would have

considered such [omitted] prior art important in deciding whether

to allow the patent application."   Impax Labs., 468 F.3d at 1374

(quoting Digital Control, 437 F.3d at 1314)).

18.   The applicable "older three tests" referenced in

Digital Control include:   (1) the objective "but-for" standard,

in other words, "where the misrepresentation was so material that

the patent should not have issued;" (2) the subjective "but-for"

test, in other words, "where the misrepresentation actually

7

caused the examiner to approve the patent application when he would not otherwise have done so;" and (3) the "but it may have" standard, "where the misrepresentation may have influenced the patent examiner in the course of prosecution." <u>See</u> <u>Impax Labs.</u>, 486 F.3d at 1374, n.5 (quoting <u>Digital Control</u>, 437 F.3d at 1315)).

19.  After determining that the applicant withheld material information, the court must decide whether the applicant acted with the requisite level of intent to mislead the PTO.  <u>See</u> <u>Baxter Int'l, Inc. v. McGaw Inc.</u>, 149 F.3d 1321, 1327 (Fed. Cir. 1998).  "Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for finding a deceptive intent."  <u>Hebert v. Lisle Corp.</u>, 99 F.3d 1109, 1116 (Fed. Cir. 1996).  That is, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive."  <u>Kingsdown</u>, 863 F.2d at 876.  A "smoking gun" is not required in order to establish an intent to deceive.  <u>See</u> <u>Merck</u>, 873 F.2d at 1422.  An inference of intent, nevertheless, is warranted where a patent applicant knew or should have known that the withheld information would be material to the PTO's consideration of the patent application. <u>Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.</u>, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

8

20.  Once materiality and intent to deceive have been established, the trial court must weigh them to determine whether the balance tips in favor of a conclusion of inequitable conduct. N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1153 (Fed. Cir. 1987).  The showing of intent can be proportionally less when balanced against high materiality.  Id.  In contrast, the showing of intent must be proportionally greater when balanced against low materiality.  Id.

21.  Because a patent is presumed valid under 35 U.S.C. § 282, inequitable conduct requires proof by clear and convincing evidence.  Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 551 (Fed. Cir. 1990).

## F.  Materiality

22.  The court previously addressed the disclosure of the Cooley article in the context of 35 U.S.C. § 102(b).  In denying defendant's motion for summary judgment of invalidity on anticipation grounds, the court stated:

> LendingTree has failed to show by clear and convincing
> evidence that the [Cooley] article discloses several
> limitations of the asserted claims.  For instance, the
> [Cooley] article does not disclose that each party to a loan
> can search and modify a database of pending loan
> applications in accordance with their role, which is a
> required element of every asserted claim.  Based on the
> evidence offered, the [Cooley] article does not disclose a
> database capable of accepting query information, instead
> describing a posting of loan packages to an electronic
> bulletin board.  In the system described by the [Cooley]
> article, information about loans would be posted to a file
> on an electronic bulletin board, and the parties to the loan
> would communicate directly with one another such that no

9

> searching or modification of a database by each of the
> parties would take place.

(D.I. 226 at 24-25) (internal citations omitted)

    23.   Material prior art, in the inequitable conduct context,
need not necessarily be invalidating prior art.  See Agfa Corp.
v. Creo Products Inc., 451 F.3d 1366, 1373 (Fed. Cir. 2006).
The court's holding is not dispositive on the question of
materiality.  Id. ("the materiality of prior art is distinct from
validity issues").  Nevertheless, the court adopts its prior
observations regarding the substance of the Cooley article for
purposes of its materiality analysis.

    24.   The Cooley article described, in most basic terms, a
system wherein:  (1) mortgage brokers have the ability to post
completed loan packages to an electronic bulletin board; (2)
wholesalers view and "shop" those completed loan packages and bid
on them; and (3) twenty-four hours later, the mortgage broker
will pick the best among their favorite wholesalers.  (DTX-37)

    25.   The Cooley article states that MixStar and L.I.O.N.
"expect to have such systems up and running in the next few
months," and does not otherwise indicate that MixStar and/or
L.I.O.N. had this technology in February 1995.  (Id.)

    26.   Many of the limitations of the independent claims of
the '559 application are not described in the Cooley article as

10

being present in the MixStar or L.I.O.N. system.[3] The claims require a database of pending loan applications. It is possible, giving the term "database" its broadest reasonable construction according to Rule 56, that the electronic bulletin board described in the Cooley article is a "database" as required by the claims. It is also possible that the "completed loan packages" described in the Cooley article comprise pending loan applications, as required by the claims. The Cooley article does not, however, indicate that any status information regarding pending loan applications is maintained on the bulletin board. As the court has previously noted, the Cooley article does not disclose: (1) that each party to a loan can search and modify a database of pending loan applications;[4] (2) a database capable of accepting query information; or (3) communication between the parties wherein searching or modification of a database by each of the parties would take place. (D.I. 226 at 24-25)

27. The term "real time" generally describes an application

[3] All of the claims as filed in the '559 application issued as the claims of the '947 patent without amendment and without the cancellation or addition of claims. (PTX-2)

[4] Plaintiff asserts that the Cooley article's emphasis on using e-mail for direct communications, and lack of a description of lenders using the bulletin board for placing bids, suggests that the communications of bids are direct (via e-email) rather than occurring through a database. (D.I. 278 at 9) The court agrees insofar as the Cooley article does not explicitly disclose the manner in which bids are placed, and stands by its prior ruling.

which requires a program to respond to stimuli within some small
upper limit of response time, which may be in milli- or
microseconds. See Free Online Dictionary of Computing, "Real-
Time," http://foldoc.org/index.cgi?query=real+time (last updated
Nov. 23, 1997); see also Wikipedia.org, "Real-time computing,"
"Real time and high performance,"
http://en.wikipedia.org/wiki/Real-time (last accessed Jan. 5,
2007) (stating that a real time system contains distinct
"operational deadlines from event to system response," not simply
high-speed performance without such deadlines). The Cooley
article provides no indication that any communications between a
borrower, lender, and/or wholesaler take place in real time in
the MixStar or L.I.O.N. system. To the contrary, the Cooley
article suggests that the communications that take place between
the parties occur over a significant period of time: the posting
of files to the bulletin board, shopping of the files by
wholesalers, wholesaler posting of bids, and "twenty-four hours
later, the mortgage broker will pick the best among their
favorite wholesalers." (DTX-37) These elapses in time, as well
as the lack of any indication of operational deadlines in the
system, suggest that the MixStar and L.I.O.N. bulletin board
systems described in the Cooley article did not operate in real
time as that term is commonly understood. Accord Interactive
Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1344 (Fed.

12

Cir. 2001) (describing transactions in which information is contemporaneously transmitted to a manufacturing computer at or prior to the time it is requested by the consumer as "real time transactions"); Phonometrics, Inc. v. Northern Telecom Inc., 133 F.3d 1459, 1465 (Fed. Cir. 1998) ("The repeated use of the [claim] limitation 'substantially instantaneously' to convey the immediacy by which the call interval cost information is transferred to the call cost register means supports our interpretation that the register displays cumulated costs as they accrue, in real time").

28.   With respect to claim 19 of the '947 patent, there is also no indication in the Cooley article that a transaction server is present in the MixStar or L.I.O.N. system, or that such a server could respond to requests to search and/or modify the database.   As there is no indication that either party could search or modify the database at all, there is also no disclosure that "requests" to do so are made in any form, that any responses to requests are made by a transaction server, or that such responses can be made in real time.

29.   Defendant argues that the Cooley article is material under Rule 56 because statements in the '947 patent specification are false and misleading in light of the disclosure of the Cooley article.   (D.I. 268 at 12-13)   The "Background of the Invention" section of the '947 patent specification states that "[a]lthough

13

some forms of automation are known, such as uniform credit scoring for loan applications and automatic generation of loan application documents, there are no known systems in the field of mortgage lending for providing relatively automatic and widespread dissemination of loan application information for automated comparison in real time." In addition, that section states that "it would be advantageous to provide a method and system for automating loan applications."[5] Defendant asserts that this statement "indicates to the public that the point of novelty of the '947 patent is providing a method for disseminating loan applications not previously known in the art, i.e., automatically and through widespread dissemination." (D.I. 268 at 12) Defendant argues that the Cooley article refutes these statements and, therefore, is material as defined by 37 C.F.R. § 1.56(b)(2)(ii). (D.I. 268 at 9-13) The court disagrees. As discussed previously, the Cooley article does not disclose that the MixStar or L.I.O.N. system had real time capabilities. The specification indicates that there were "no known systems . . . for providing relatively automatic and widespread dissemination of loan application information for automated comparison **in real time,**" and this is not refuted by or inconsistent with the information contained in the Cooley article. Further,

---

[5]Neither statement in the specification was amended during prosecution of the '559 application. (PTX-2 at IMX035559-60)

14

plaintiff's marketing documents cited by defendant do not contain any detailed functional or technical description of either the MixStar or L.I.O.N. system. (DTX-80; DTX-154) The disclosures of plaintiff's documents do not appear to be inconsistent with the statements in the '947 patent specification. (E.g., DTX-80 at IMX013190 (L.I.O.N. is "not a 'bid/ask' forum") (December 17, 1997); DTX-154 at IMX013280 (L.I.O.N. "[r]esides on the internet," however "Lenders respond via phone or fax, not online") (May 8, 1997); id. at IMX-013281 (MixStar is a "mortgage information service with a small trading bulletin board," which "[r]esides on the internet," however "does not extensively support active on-line trading.")[6] The '947 patent specification plainly acknowledges that some forms of automation were known in the industry. Based on the foregoing, the court concludes that defendant has not demonstrated that the Cooley article, or the MixStar or L.I.O.N. systems named therein, are material to patentability as prescribed by 37 C.F.R. § 1.56(b)(2)(ii).

30. Additionally, defendant has not made out a prima facie case of unpatentability under 37 C.F.R. § 1.56(b). As an initial matter, the Cooley article provides only projections, not actual observations, about the MixStar or L.I.O.N. systems. (E.g., DTX-37 ("MixStar and LION . . . expect to have such systems up and

---

[6]DTX-80 post-dates the filing of the '559 application (September 12, 1997).

running in the next few months"). Defendant recognizes that
neither system was likely in operation as of the date of the
Cooley article, and provides no corroboration for its statement
that the Cooley article indicated that the MixStar and L.I.O.N.
systems "were in the process of being implemented in 1995."
(D.I. 268 at 13) Where a reference discloses a method utilizing
a certain product or composition, the method need not necessarily
be enabled to be a material reference with respect to the
composition that is described. See Kemin Foods , L.C. v.
Pigmentos Vegetales del Centro S.A. de C.V., No. Civ. A. 03-1204,
2004 WL 542193, *8 (Fed. Cir. Mar. 17, 2004) (non-precedential)
("the article describes a composition that is likely within the
scope of those claims, and is therefore prima facie material to
patentability, irrespective of whether it was clear that the
method disclosed in the article was fully operative"). In this
case, the materiality of the Cooley article pivots on that
article's description of the MixStar and L.I.O.N. systems, and
not the existence of any of its disclosed components. The Cooley
article clearly does not contain an enabling description of the
MixStar or L.I.O.N. systems, and contains little indication that
either system had even been developed as of February 1995.
Further, as discussed previously, there is an almost complete
lack of similarity between the disclosure of the MixStar and
L.I.O.N. systems in the Cooley article and the claimed

16

invention.[7]  There is simply nothing compelling in the disclosure of the Cooley article upon which the court may predicate a conclusion that the claims of the '947 patent were unpatentable.[8] 37 C.F.R. § 1.56(b).

31.  Defendant also argues that the Cooley article satisfies the threshold for materiality under the "reasonable examiner" standard.  First, defendant argues that a reasonable examiner would have considered the Cooley article important because that article refutes the aforementioned statements in the '947 patent specification.  (D.I. 268 at 13)  As discussed previously, the disclosure of the Cooley article is not inconsistent with the specification, and defendant's argument in this regard is not persuasive.  Second, defendant argues that "[t]he Cooley article would [] have been important to a reasonable examiner considering the '559 [sic] application in 1997 because it would have prompted a reasonable examiner to conduct research on the status of the MixStar and L.I.O.N. systems since the publication of the article in 1995."  (Id. at 13-14)  Following defendant's argument through to fruition, there is no indication in the record that, even had

---

[7]Contrary to defendant's assertion, even giving each claim term its broadest possible reasonable meaning as the court has in its analysis, the Cooley article does not anticipate the asserted claims of the '947 patent.  (D.I. 268 at 10)

[8]Mr. Payankannur's testimony that he would have disclosed the technical details of the L.I.O.N. system to the prosecuting attorney had he been aware of it does not alter this conclusion. (D.I. 268 at 9 (citing D.I. 252 at 485:9-12))

17

the examiner been motivated (by the Cooley article) to complete
such research, he would have found the MixStar or L.I.O.N.
systems important to patentability. As discussed previously, the
record is largely devoid of information regarding the technical
and functional capabilities of either system at any time.[9]
Defendant's argument with respect to the "reasonable examiner"
standard, however, is not that the MixStar and/or L.I.O.N.
systems themselves would have been considered important to
patentability; defendant's argument pivots on the disclosure of
the Cooley article.  (Id.) For the reasons discussed previously,
the court declines to hold that this general and largely
undescriptive disclosure may have influenced the examiner's
findings, or otherwise would have been important in deciding
whether to allow the '559 application.[10]  Impax Labs., 468 F.3d
at 1374 & n.5.

    32.  Finally, defendant argues that the Cooley article is

_____

[9]The court, therefore, rejects defendant's assertion that
the MixStar and L.I.O.N. systems themselves constitute material
prior art which was not disclosed to the examiner during
prosecution of the '559 application.  (D.I. 268 at 2)

[10]Plaintiff argues that the Cooley article is cumulative of
information already of record in the prosecution history of the
'947 patent.  (D.I. 278 at 5)  Defendant correctly points out
that the prosecution history of the '947 patent was not admitted
as a substantive exhibit at trial (by either party), and did not
present any evidence to establish cumulativeness at trial.  (D.I.
282)  Defendant argues that plaintiff can not now back-door a
cumulative argument through its post-trial briefing.  (Id. at 8)
Because the court holds that the Cooley article is not material,
the court need not reach these arguments.

material to patentability because the examiner would have considered it important to examine whether the technology plaintiff perceived to be competitive with plaintiff's invention was invalidating prior art. (D.I. 268 at 14)  Defendant provides no authority for its proposition, and merely cites to record evidence that tends to show that plaintiff considered MixStar and L.I.O.N. to be industry competitors.  (Id.)  The court declines to impose a duty on patent applicants to disclose the technology of their industry competitors during the patent application process, regardless of relevance to the claimed invention.  Such a rule would impermissibly shift the focus onto plaintiff's subjective views on its market competitors and away from the technology itself and, even if practicable, would hardly be condoned under the trade secrets laws.

33.  In view of the foregoing, the court concludes that the Cooley article is not material to the patentability of the '947 patent.  Having so held, the court does not reach the issues of Mr. Fraser's knowledge and intent.

## III.  CONCLUSION

34.  For the reasons discussed above, the court concludes that defendant has failed to prove, by clear and convincing evidence, that the '947 patent is unenforceable due to inequitable conduct in the prosecution of the patent based on the Cooley article, MixStar system or L.I.O.N. system.